[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13736

_____

D.C. Docket No. 8:10-cv-00900-SCB-TGW


FRANCES CARLSON,

                        Plaintiff - Counter Defendant - Appellant,

versus

UNITED STATES OF AMERICA,

                        Defendant - Counter Claimant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 13, 2014)

Before CARNES, Chief Judge, HULL and COX, Circuit Judges.

COX, Circuit Judge:

In this case, the Plaintiff, Fran Carlson, filed suit to determine her liability for $148,000 in penalties assessed by the Internal Revenue Service ("IRS") for aiding and abetting understatement of tax liability in violation of I.R.C. § 6701. On appeal, Carlson contends that the district court erred by instructing the jury that the Government must prove its case by a preponderance of evidence instead of by clear and convincing evidence. Carlson also contends that the district court erred in denying her motion for judgment as a matter of law on some of the penalties because insufficient evidence supports the jury's verdict. We conclude that the Government must prove its case under I.R.C. § 6701 by clear and convincing evidence because I.R.C. § 6701 requires the Government to prove fraud. Additionally, we conclude that insufficient evidence supported the jury's verdict on the penalties Carlson challenges on appeal because the Government did not meet its burden of proving that Carlson actually knew the returns she prepared understated the correct tax.

## Facts and Procedural History

The Plaintiff, Fran Carlson, worked for two companies: JH Accounting, Inc. and Simple Financial Solutions, Inc. (collectively "Jackson Hewitt") as a tax return preparer. Both companies did business as Jackson Hewitt and were owned by Daniel Prewett. Carlson is not a certified public accountant and does not have a degree in accounting. Before working for Jackson Hewitt, Carlson held several

2

jobs over 30 years. None of Carlson's past employment included preparing tax returns.

When she started working for Jackson Hewitt, Carlson attended an in-house tax preparation class on preparing individual tax returns. At Jackson Hewitt, Carlson began preparing tax returns even though she had no experience in tax preparation and only the in-house class for education. To prepare the individual returns, Carlson used a Jackson Hewitt software program. The program provided the preparer with a question to ask the client and the preparer would input the client's response. From this information, the program generated a tax return for the client. In the first year Carlson worked for Jackson Hewitt, she prepared between 200–300 tax returns.

In her second year, Carlson began to work on corporate tax returns. Before this time, Carlson had never prepared a corporate tax return. To prepare the returns, Carlson used a software program that automatically populated the return with information from a client's previous tax return.

In 2006, Prewett, the owner of Jackson Hewitt, was arrested for cocaine distribution and money laundering. Following the arrest, the IRS began investigating Prewett's business. At the same time, Carlson left Jackson Hewitt. Carlson had worked for Jackson Hewitt for five years and prepared approximately 1200–1500 tax returns.

3

During the investigation of Prewett, the IRS also audited the returns Carlson prepared. The auditors determined that deductions could not be substantiated in 40 out of about 1200–1500 tax returns that Carlson prepared. Following the audits, the IRS assessed penalties against Carlson under I.R.C. § 6701[1] for aiding and abetting understatement of tax liability. Carlson paid 15% of the penalties and filed for a refund. After her claim for a refund was denied by the IRS, Carlson brought this suit for a determination of her liability.

In the district court, the Government conceded 13 of the penalties in response to Carlson's summary judgment motion. The remaining 27 penalties were tried to a jury. At the close of the Government's case and prior to submission to the jury, Carlson moved for judgment as a matter of law under Fed. R. Civ. P. 50(a). Both motions were granted in part and denied in part.

Over Carlson's objection, the district court instructed the jury that the Government had the burden of proof by a preponderance of the evidence. Carlson

---

[1] "(a) Imposition of penalty
Any person—

> (1) who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document,
>
> (2) who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and
>
> (3) who knows that such portion (if so used) would result in an understatement of the liability for tax of another person,

shall pay a penalty with respect to each such document in the amount determined under subsection (b)." I.R.C. § 6701.

contended that the correct standard of proof was by clear and convincing evidence. After deliberating, the jury returned a verdict for the Government on all penalties. The district court entered a $119,173.12 judgment in favor of the Government. Carlson filed a renewed motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) or for a new trial under Fed. R. Civ. P. 59(e).  The district court denied both motions.  Carlson appeals.

## Issues on Appeal

Carlson raises two principal issues on appeal.  First, Carlson contends that the district court erred by instructing the jury that the standard of proof is by a preponderance of the evidence.  Second, Carlson contends that the district court erred by denying her motion for judgment as a matter of law on a subset of the total penalties at issue.[2]

## Standards of Review

We review de novo statements of law (including the standard of proof) in jury instructions.  *Fidelity Interior Const., Inc. v. Southeastern Carpenters*

---

[2] Additionally, Carlson contends that she should have been granted summary judgment because of an alleged settlement with the IRS, because the administrative appeal process violated her due process rights, and because I.R.C. § 6701 only applies to individuals who do more than prepare a return.  After careful review and the benefit of oral argument, we conclude that these contentions lack merit and we decline to discuss them further.

Carlson also contends that the district court erred by granting the Government's motion in limine to exclude evidence of individual IRS agents' conclusions.  In view of our decision that all the remaining penalties are to be retried because of the incorrect jury instruction on the standard of proof, we need not decide whether the district court abused its discretion in granting the Government's motion in limine.

*Regional Council*, 675 F.3d 1250, 1259 (11th Cir. 2012).  We review de novo the district court's ruling on a motion for judgment as a matter of law.  *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291–92 (11th Cir. 2012).

## Discussion

### I.    The Government must prove violations of I.R.C. § 6701 by clear and convincing evidence.

At trial, the parties disputed the correct standard of proof.  Carlson contends the correct standard should be clear and convincing evidence while the Government contends the correct standard is a preponderance of the evidence.  The district court agreed with the Government and instructed the jury that the Government must prove its case by a preponderance of the evidence.  We conclude that this instruction misstated the law.

Under the Eleventh Circuit's longstanding precedent, the Government must prove fraud in civil tax cases by clear and convincing evidence.  *See, e.g.*, *Ballard v. Comm'r of Internal Revenue*, 522 F.3d 1229, 1234 (11th Cir. 2008) ("The Commissioner has the burden of proving allegations of fraud by clear and convincing evidence."); *Korecky v. Comm'r of Internal Revenue*, 781 F.3d 1566, 1568 (11th Cir. 1986) ("The IRS bears the burden of proving fraud, which must be established by clear and convincing evidence."); *Marsellus v. Comm'r of Internal Revenue*, 544 F.2d 883, 885 (5th Cir. 1977) (holding fraud must be proved by clear and convincing evidence); *Webb v. Comm'r of Internal Revenue*, 394 F.2d 366,

6

378 (5th Cir. 1968) (same); *Goldberg v. Comm'r of Internal Revenue*, 239 F.3d 316, 320 (5th Cir. 1956) ("The Commissioner has the burden of proving fraud by clear and convincing evidence."); *Jemison v. Comm'r of Internal Revenue*, 45 F.2d 4, 5–6 (5th Cir. 1930) ("Fraud is not to be presumed, but must be determined from clear and convincing evidence, considering all the facts and circumstances of the case."). Our sister courts of appeals follow the same rule. *See, e.g.*, *Grossman v. Comm'r of Internal Revenue*, 182 F.3d 275, 277 (4th Cir. 1999) (holding that a finding of fraud must be supported by clear and convincing evidence); *Lessmann v. Comm'r of Internal Revenue*, 327 F.2d 990, 993 (8th Cir. 1964) (same); *Davis v. Comm'r of Internal Revenue*, 184 F.2d 86, 86 (10th Cir. 1950) (same); *Rogers v. Comm'r of Internal Revenue*, 111 F.2d 987, 989 (6th Cir. 1940) ("Fraud cannot be lightly inferred, but must be established by clear and convincing proof."); *Duffin v. Lucas*, 55 F.2d 786, 798 (6th Cir. 1932) (same); *Griffiths v. Comm'r of Internal Revenue*, 50 F.2d 782, 786 (7th Cir. 1931) ("Fraud is never presumed but must be determined from clear and convincing evidence, considering all the facts and circumstances of the case.").

Thus, the inquiry is whether I.R.C. § 6701 requires the Government to prove fraud. If I.R.C. § 6701 requires the Government to prove fraud, then under our precedent the Government must prove its case by clear and convincing evidence. I.R.C. § 6701 penalizes an individual

7

(1) who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document, (2) who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and (3) who knows that such portion (if so used) would result in an understatement of the liability for tax of another person . . . .

The third element embodies a scienter requirement. As other courts have recognized, the third element of I.R.C. § 6701 requires the Government to prove that the preparer acted with *actual* knowledge that the document would deprive the Government of tax it is owed. *See Mattingly v. United States*, 924 F.2d 785, 791 (8th Cir. 1991); *Sansom v. United States*, 703 F. Supp. 1505, 1511 (N.D. Fla. 1988); *Warner v. United States*, 698 F. Supp. 877, 882 (S.D. Fla. 1988).

Were the level of scienter required by I.R.C. § 6701 not so high, we might face a difficult task in deciding whether I.R.C. § 6701 requires proof of fraud. However, under this standard the IRS must prove that the preparer actually knew the return understated tax. In other words, the IRS must prove that the preparer deceitfully prepared a return knowing it misrepresented or concealed something that understates the correct tax. This is a classic case of fraudulent conduct. The standard could be accurately paraphrased as requiring the IRS to prove that the preparer actually knew that the return defrauded the Government of tax it is owed. As one of our district courts noted, "[i]f the preparer *knows* that use of the tax

document as prepared will result in an understatement of tax liability, must not the document necessarily be false or fraudulent?" *Warner*, 698 F. Supp. at 882.

The Government contends that I.R.C. § 6701 cannot be a fraud statute because the statute never uses the word "fraud." However, the lack of the word "fraud" is immaterial if the conduct the government must prove meets the definition of fraud. And based on the foregoing analysis, it does. As a master of the English language noted, "What's in a name? That which we call a rose by any other name would smell as sweet . . ."[3] And, in other cases considering whether I.R.C. § 6701 requires proof of fraud for determining the statute of limitations, the Government contends—and courts agree—that I.R.C. § 6701 does require proof of fraud. *See, e.g.*, *Mullikin v. United States*, 952 F.2d 920, 929 (6th Cir. 1991) (holding no limitation applied "since Section 6701 is an anti-fraud provision of the Code."); *Lamb v. United States*, 977 F.3d 1296, 1297 (8th Cir. 1992) (holding Section 6701 is an anti-fraud provision).

We recognize that our decision places us at odds with two other courts of appeals that have considered the correct standard of proof under I.R.C. § 6701. Both the Second and the Eighth Circuits have held that the correct standard of proof is by a preponderance of the evidence. *See Barr v. United States*, 67 F.3d 469, 469 (2d Cir. 1995); *Mattingly v. United States*, 924 F.2d 785 (8th Cir. 1991).

---

[3] William Shakespeare, *Romeo and Juliet*, Act II, Scene 2.

The Second Circuit followed the Eighth Circuit, and gave little rationale for its decision. The Eighth Circuit acknowledged that the Government must prove civil tax fraud by clear and convincing evidence, but held that this rule did not apply to I.R.C. § 6701 for three reasons.

First, the Eighth Circuit concluded that I.R.C. § 6701 does not require proof of fraud because it "does not refer to the evasion of tax." *Mattingly*, 924 F.2d at 788. At the outset, it is unclear why reference to the evasion of tax is relevant. The Eighth Circuit's prior precedent that fraud must be proven by clear and convincing evidence does not include this limitation. Neither does the Eleventh Circuit's precedent require reference to the evasion of tax. But, even if we were to assume that it is correct to require a statute to reference tax evasion, I.R.C. § 6701 does reference tax evasion. IRC § 6701 requires actual knowledge that a return "would result in an *understatement of the liability for tax* of another person." (emphasis added). Contrary to *Mattingly*'s conclusion, this penalty exists to penalize tax preparers who design returns to evade tax.

Second, the Eighth Circuit concluded that "the integrated enactment of §§ 6700–03 suggests application of a uniform standard of proof." *Id.* But, we know of no reason why statutes enacted at the same time must all use the same standard of proof. If anything, such a rule would likely lead to perverse results based on happenstance instead of reason and precedent. We decline to allow such an

10

assumption to overrule our clear precedent that the Government must prove civil tax fraud by clear and convincing evidence.[4]

Finally, the Eighth Circuit concluded that the "the overall civil penalty structure applicable to taxpayers and tax preparers suggests that § 6701 is just another piece in the expansive non-fraud penalty scheme." *Id.* at 789.  While we agree with the Eighth Circuit's recognition that the penalty structure is relevant, we think it suggests the opposite conclusion: that I.R.C. § 6701 does require proof of fraud.  The first district court in our circuit to analyze the scienter requirement in I.R.C. § 6701 artfully identified three penalties in the Internal Revenue Code that pertain to tax preparers:  I.R.C. §§ 6694(a); 6694(b); and 6701.  *Sansom*, 703 F. Supp. at 1510.    First, I.R.C. § 6694(a) penalizes tax preparers who take unreasonable positions.  Second, I.R.C. § 6694(b) penalizes tax preparers who understate the correct tax willfully or recklessly, even if the preparer does not actually know the return understates the correct tax.  Third, and in contrast, I.R.C. § 6701 requires actual knowledge that the document understates tax.  "[A]ctual knowledge is a higher standard than the 'willfulness' standard utilized in other statutes.  Simply put, 'know' requires knowledge—awareness of the facts and the

---

[4] Even assuming laws enacted simultaneously must share the same standard of proof, the Eighth Circuit provides no reason why the correct standard is by a preponderance of the evidence and not by clear and convincing evidence.  The act does not specify a standard of proof for I.R.C. § 6700–03.  Thus, the Eighth Circuit's analysis does not help us determine which standard of proof is correct; it merely states that all three penalties must use the same standard.

ultimate result of the conduct." *Id.* Whereas both § 6694(a) and § 6694(b) penalties can apply when a tax preparer is negligent or reckless, § 6701 requires proof that the tax preparer knew his or her conduct would defraud the Government. This penalty structure indicates that I.R.C. § 6701 is designed to require the highest level of culpability among the civil penalties for tax preparers.

For these reasons, we are not persuaded by the Eighth Circuit's reasoning. We hold that the Government must prove fraud in I.R.C. § 6701 penalties by clear and convincing evidence. In this case, many of the penalties were supported only by weak evidence. Under these circumstances, we cannot assume that the district court's error was harmless because the jury instruction reduced the level of proof required.

## II.    The district court erred by denying Carlson's motions for judgment as a matter of law.

Carlson contends that the district court erred by denying her motions for judgment as a matter of law on the penalties related to the following returns: John Mengelberg's 2004 tax return; Ferretti's Inc.'s 2002 and 2003 tax returns; Southern Crane and Dragline, Inc.'s 2004, 2005, and 2006 tax returns; Robert and Sherry Edwards's 2006 tax return; Tim Drabick's 2004 and 2005 tax returns; Albert and Janice Cox's 2006 tax return; and Citrus Land Development's 2004 and 2005 tax returns. Carlson contends that insufficient evidence supports the jury's verdict on these penalties. According to Carlson, no evidence in the record

12

supports the inference that Carlson actually knew these returns understated the correct tax. Because no reasonable jury could find on this evidence that Carlson actually knew these returns understated the correct tax, we reverse the district court's order on these motions and direct entry of judgment in favor of Carlson on these penalties.

We first discuss the law related to these penalties generally before discussing the evidence related to each penalty at issue. In reviewing the district court's ruling on a motion for judgment as a matter of law, "we view the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Hernandez*, 743 F.3d 812, 814 (11th Cir. 2014). But, "an inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982) (quotation omitted).

In each of the penalties Carlson challenges on appeal, the Government presented no evidence suggesting that Carlson actually knew the returns understated the correct tax. The Government only presented evidence that an auditor identified deductions that the taxpayer could not substantiate. In contrast, Carlson presented substantial evidence from multiple witnesses showing that she did not know the returns understated the correct tax. As the Government notes, the

jury was free to disbelieve Carlson's witnesses. But, even if the jury completely discredited every one of Carlson's witnesses and Carlson's own testimony, the Government still failed to adduce evidence meeting its burden of proof.

The Government contends that the auditors' conclusions that the taxpayers did not substantiate deductions is sufficient proof that Carlson actually knew the returns understated the correct tax. (Government's Br. at 41–54.) This approach faces two problems: it attempts to shift the burden of proof and it asks the jury to make an unreasonable inference. First, this approach essentially flips the burden of proof in the case. The Government did not present evidence that Carlson actually knew the returns understated the correct tax. Instead the Government's approach simply presents evidence that the returns contain some error, and then requires that Carlson bear the burden of proving that she did not actually know of the error. Under I.R.C. § 6703, the burden of proof for penalties under I.R.C. § 6701 is on the Government, not the return preparer. It is insufficient for the Government to only present evidence that some error existed in a return; the Government must prove that the tax preparer actually knew the return understated tax.

Second, absent other supporting evidence, a jury cannot reasonably infer that a tax preparer knew a return understated the correct tax from the mere fact that a taxpayer was unable or chose not to substantiate deductions when audited by the IRS. Neither does the existence of an error allow a reasonable inference that the

14

tax preparer knew the return understated the correct tax. A jury can reasonably infer from an audit finding an error that the return in fact understated the correct tax. However, this evidence does not tell us why the return understated the correct tax or—more importantly—whether Carlson actually knew the return was inaccurate. High error rates are normal even among the IRS's own tax preparers.

In this analysis, the problem with the Government's evidence is not that it relies on circumstantial evidence. Circumstantial evidence can be used to meet a burden of proof. *See Mora v. Jackson Memorial Foundation, Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010). The problem is that this circumstantial evidence says nothing about what Carlson actually knew. Any conclusion that Carlson actually knew the return understated tax is not made based on this evidence, but rather is made from pure speculation. With these principles in mind, we proceed to examine the evidence presented in relation to each penalty that Carlson challenges on this appeal.

For each of these penalties, Carlson contends that insufficient evidence supports the finding that she actually knew the return understated the correct tax. When considering these motions, the district court applied the preponderance of the evidence standard by which the case was tried. The correct standard is clear and convincing evidence. The Government failed to present sufficient evidence for a reasonable jury to find that the Government met its burden of proof under

either standard. Because we would reach the same result under either standard of proof, we need not decide whether in the unique circumstances of this case the higher and correct standard of proof, or the lower and incorrect one that was applied at trial, should be used to review the district court's denial of Carlson's motions for judgment as a matter of law on the challenged penalties. We will explain why judgment as a matter of law should have been granted on all of the challenged penalties even under that lesser and incorrect standard.

## A.    John Mengelberg's 2004 Tax Return

The evidence showed that Dr. Mengelberg owned a dental practice known as the Art of Dentistry. Carlson prepared the corporate tax return for the Art of Dentistry. According to the IRS, Art of Dentistry claimed fraudulent deductions on its corporate tax return which resulted in an understatement on Mengelberg's personal return. The IRS placed in evidence a copy of Art of Dentistry's 2004 return and the audit results pertaining to that return. But, the IRS failed to introduce any evidence relating to the return in question: Mengelberg's personal return for tax year 2004. Accordingly, insufficient evidence supported the jury's finding that Carlson prepared Mengelberg's personal return and that she knew the personal return understated the correct tax.

**B.    Ferretti's Inc.'s 2002 and 2003 Tax Returns**

An IRS auditor concluded that Ferretti's Inc.'s claimed unsubstantiated deductions for accounting fees, automobile expenses, real estate taxes, and carry-forward net operating losses.

At trial, the Government did not present any evidence that Carlson knew the returns were fraudulent.  In fact, the evidence suggested that Carlson did not know of any errors.  It was undisputed that Sue Ferretti mailed the information later placed on the tax returns to Jackson Hewitt.  When Carlson received the information, these expenses were already categorized.  Occasionally, Carlson inquired about a suspicious looking expense.  When the owners confirmed the expense, Carlson accepted their confirmation.  And, Carlson had no duty to audit Ferretti's Inc.'s claimed expenses.  Ferretti's Inc.'s business records included checks on the books for each of the expenses the IRS disallowed.

Mr. Ferretti testified that the returns were inaccurate because Ferretti's Inc. had provided Carlson with inaccurate and fraudulent business expenses.  Mr. Ferretti explained that Mrs. Ferretti made the decisions about whether an expense was personal or business and would then send that information to Carlson. However, Mrs. Ferretti had a gambling addiction and had been embezzling money from Ferretti's Inc. during the time in question in order to hide her addiction.  Mr.

17

Ferretti testified that he had only met Carlson once and that she would have had no reason to suspect, much less know, that Mrs. Ferretti was falsifying these expenses.

Instead of presenting any evidence that Carlson knew the return understated the correct tax, the Government merely presented the audit results and asked the jury to infer that Carlson actually knew the return understated the correct tax. Without supporting evidence, such an inference is unreasonable speculation. Accordingly, the Government did not meet its burden of proving that Carlson actually knew the returns understated the correct tax.

## C.    Southern Crane and Dragline, Inc.'s 2004, 2005, and 2006 Returns

An IRS auditor concluded that Southern Crane and Dragline, Inc. claimed unsubstantiated deductions for a personal vehicle, welder, and utility expenses.

At trial, the Government did not present any evidence that Carlson knew the returns understated tax. In fact, the evidence suggested that Carlson did not know of any errors. Owner Sherrie Edwards made the classifications for what was a business expense. Carlson would even question Edwards about any expenses she thought looked unusual. Furthermore, owner Robert Edwards testified that there were no errors with the tax return, but that he was pressured into settling with the IRS because of the cost of litigation and the difficulty of substantiating deductions.

Instead of presenting any evidence that Carlson knew the returns understated the correct tax, the Government merely presented the audit results and asked the

18

jury to infer that Carlson actually knew the returns understated the correct tax. Without supporting evidence, such an inference is unreasonable speculation. Accordingly, the Government did not meet its burden of proving that Carlson actually knew the returns understated the correct tax.

## D.    Robert and Sherry Edwards' 2006 Tax Return

An IRS auditor concluded that Mr. and Mrs. Edwards's return included an improperly filed Schedule C.

At trial, the Government did not present any evidence that Carlson knew the return understated tax. In contrast, the Government's witnesses—IRS auditors—testified that the return was either correctly filed or was as accurate as possible under the circumstances. Carlson testified that she thought and still thinks that the correct way to report Mr. and Mrs. Edwards's income is on a Schedule C. The Edwards's prior individual return from 2005, which Carlson did not prepare, also reported their compensation on a Schedule C form. The IRS auditor testified that the method for reporting the income was a close judgment call, even though he disagreed with how it was reported. The IRS auditor also testified that because Edwards was not properly listed as an employee of his company the only accurate approach was to report the income on a Schedule C. A different IRS agent testified that the correct method was to report this income on a Schedule C.

Instead of presenting any evidence that Carlson knew the return understated the correct tax, the Government merely presented the audit results—which were contradicted by the testimony of IRS agents—and asked the jury to infer that Carlson actually knew the return understated the correct tax. Without supporting evidence, such an inference is unreasonable speculation. Accordingly, the Government did not meet the burden of proving that Carlson actually knew the return understated the correct tax.

### E.    TCORP's 2004 and 2005 Tax Returns

An IRS auditor concluded that TCORP claimed unsubstantiated deductions for rent and fixed assets on its 2004 and 2005 tax returns.

At trial, the Government did not present any evidence that Carlson knew the returns understated tax. In fact, the evidence suggested that Carlson did not know of any errors. Carlson never met or spoke with TCORP's owner. TCORP was Prewett's client, not Carlson's client. Prewett asked Carlson to perform the data entry for the return and provided her with all the information. In preparing the return, Carlson only used the information provided by Prewett.

Instead of presenting evidence that Carlson knew the returns understated the correct tax, the Government merely presented the audit results and asked the jury to infer that Carlson actually knew the returns understated the correct tax. Without supporting evidence, such an inference is unreasonable speculation. Accordingly,

the Government did not meet the burden of proving that Carlson actually knew the returns understated the correct tax.

## F.    Albert and Janice Cox's 2006 Tax Return

An IRS auditor concluded that Mr. and Mrs. Cox claimed an unsubstantiated deduction on their 2006 tax return for automobile expenses related to an S corporation they owned.

At trial, the Government did not present any evidence that Carlson knew the returns understated tax.  In fact, the evidence suggested that Carlson did not know of any errors.  Mrs. Cox testified that she had never spoken to Carlson and instead provided all her information to Prewett.  Mrs. Cox testified that she even provided a mileage log for the automobile expense.  Carlson testified that Mr. and Mrs. Cox were not her clients, but that she prepared the return because their usual tax preparer was going on maternity leave.  Carlson was provided with the information to put on the return and had no reason to doubt its accuracy.  The IRS auditor initially found that the return Carlson prepared understated the correct tax by $5,675, but this amount was ultimately reduced by the IRS to only $548.

Instead of presenting any evidence that Carlson knew the return understated the correct tax, the Government merely presented the audit results and asked the jury to infer that that Carlson actually knew the return understated the correct tax.  Without supporting evidence, such an inference would be unreasonable

21

speculation.  Accordingly, the Government did not meet the burden of proving that Carlson actually knew the return understated the correct tax.

## G.    Citrus Land Development's 2004 and 2005 Tax Return

An IRS auditor concluded that Citrus Land Development claimed unsubstantiated deductions for a subcontracting fee and interest paid on a loan.

The Government presented no evidence that Carlson knew the returns understated the correct tax.  In fact, the evidence suggested that Carlson did not know of any errors.  Owner Steven Gray testified that all the deductions in the return were accurate, but that he was unable to provide sufficient documentary proof during the audit.  He chose to settle the case simply because of the expense of litigating against the IRS.  Gray also testified that he decided what was deductible and provided the information to Carlson.  At trial, Carlson testified that she also prepared the tax return for Citrus Land Development's lender who reported the same amount as interest income that Citrus Land Development deducted as interest expense on its return.

Instead of presenting evidence that Carlson knew the return understated the correct tax, the Government merely presented the audit results and asked the jury to infer that Carlson actually knew the return understated the correct tax.  Without supporting evidence, such an inference would be unreasonable speculation.

22

Accordingly, the Government did not meet the burden of proving that Carlson actually knew the return understated the correct tax.

## Conclusion

Insufficient evidence supports the jury's verdict on the penalties related to: John Mengelberg's 2004 tax return; Ferretti's Inc.'s 2002 and 2003 tax returns; Southern Crane and Dragline, Inc.'s 2004, 2005, and 2006 tax returns; Robert and Sherry Edwards' 2006 tax return; Tim Drabick's 2004 and 2005 tax returns; Albert and Janice Cox's 2006 tax return; and Citrus Land Development's 2004 and 2005 tax return. Accordingly, we reverse the district court's denial of these motions and remand for the district court to enter judgment in favor of Carlson on these penalties. Additionally, the Government must prove its case under I.R.C. § 6701 by clear and convincing evidence. In this case, the district court's instruction on a preponderance standard likely harmed Carlson. Accordingly, we vacate the district court's judgment on all remaining penalties and remand for a new trial.

**REVERSED IN PART, VACATED AND REMANDED WITH INSTRUCTIONS IN PART.**