[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-10407

_____

D.C. Docket No. 6:14-cv-01534-ACC-TBS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASON STINSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 14, 2016)

Before JORDAN, ROSENBAUM, and SILER,[*] Circuit Judges.

SILER, Circuit Judge:

Defendant Jason Stinson appeals the district court's grant of the Government's motion for a preliminary injunction, enjoining him from "acting as a federal tax return preparer," during the pendency of the Government's suit against him for improper tax practices. For the following reasons, we AFFIRM.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

LBS Tax Services ("LBS") is a tax return preparation business based in Orlando, Florida. After Stinson became a franchisee of a dozen LBS stores located in several states, he began operating many of the stores under the name Nation Tax Services, LLC in 2013. Situated in low-income areas, his stores directly target customers who are "underprivileged, undereducated poor people who [may] qualify for the Earned Income Tax Credit [("EITC")]."

The Government filed a complaint in 2014 seeking, under §§ 7402, 7407, and 7408 of the Internal Revenue Code ("I.R.C."), to enjoin Stinson, "individually and doing business as LBS Tax Services and Nation Tax Services, LLC," from "acting as a federal tax return preparer or requesting, assisting in, or directing the

---

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than himself."

The Government complained that

Stinson and many of his managers and preparers . . . engage in pervasive tax fraud by making (and/or directing or encouraging others to make) false claims on their customers' tax returns, including: fabricating business income and expenses, claiming false itemized deductions, reporting bogus education credits, and engaging in other fraudulent activities aimed at maximizing their customers' refunds and, in turn, their fees.[1]

These alleged practices allowed Stinson to manipulate a customer's income to ensure that it fell within the "sweet spot" necessary to qualify for the EITC. The Government proffered deposition testimony and customer returns that exhibited fabricated numbers and claimed the EITC, and offered evidence that Stinson contrived expenses and falsely claimed other credits for customers, such as the American Opportunity Education Credit . Moreover, the Government introduced evidence that Stinson charges customers high return preparation fees—sometimes without their knowledge of how much they were charged—that are often in excess of $900 for what would otherwise be a simple return.[2]

---

[1] For simplicity, this opinion will follow the district court in referring to Stinson and his tax preparers as "Stinson."

[2] According to the Government, the national average fee for preparing and filing a basic Form 1040 is $159.

3

In late 2015, the Government filed a motion requesting that the district court preliminarily enjoin Stinson from employing his tax return preparation business in order "[t]o prevent Stinson's continued and repeated fraud" during the pending trial proceedings. The motion was accompanied by numerous exhibits, such as deposition transcripts, tax returns, and other tax documents.

Stinson challenged the motion, asserting, inter alia, that the Government had failed to produce an expert witness and had failed to employ statistical sampling. The district court rejected Stinson's arguments and determined that balancing the relevant "equitable factors weighs in favor of a preliminary injunction":

> The Government has presented enough evidence to show a pattern of false tax returns sufficient to prove it is likely to succeed on the merits. . . . Those false tax returns submitted to the Court were prepared by at least twelve of Stinson's tax return preparers employed in four different states. Notably, the falsely reported numbers are not merely oversight, or a computational error, because the errors are repeated and the amounts are significant. The Court finds it implausible that this is due to plain human error.
> . . . .
> The Government has provided over ten examples of false tax returns prepared in 2015 for the 2014 tax year. . . . Thus, even in 2015, despite being on notice, Stinson continued to prepare tax returns in the same manner that caused the Government to initiate this lawsuit by falsely claiming unreimbursed employee expenses, charitable contributions, and business expenses for non-existent businesses.
> . . . .
> If an injunction is not granted, the Government will be irreparably harmed because Stinson can continue to profit from falsifying tax returns. Moreover, the Government lacks the resources to audit every tax return that Stinson has prepared (over 9,000 tax returns) and would thus be forced to continuously monitor Stinson and bring multiple lawsuits. More significant, however, is the harm that

4

Stinson's business causes his customers, which cannot be separated from this equitable analysis. Stinson's customers are relying on his business to properly handle their taxes. In return, Stinson's business exposes these primarily low-income customers to individual tax liability. Both the Government and Stinson's customers will suffer irreparable harm if an injunction is not granted. Moreover, it is in the public's best interest to protect vulnerable customers from the inaccurate preparation of their taxes, not to deplete Government resources, and to maintain the public trust in the tax system.

In contrast, if an injunction is granted, Stinson will be prohibited from operating his tax preparation business and will temporarily lose his source of income. However, Stinson is still in his thirties and an injunction does not prevent him from making a living in any manner aside from tax preparation. Stinson argues that granting a preliminary injunction will disserve the public because it will shut down a business that is beneficial to low-income taxpayers that would otherwise not receive assistance in preparing their taxes. . . . Stinson's argument may have been persuasive if he was not engaging in conduct that exposed his customers to additional and burdensome tax liability. Additionally, there are other tax preparation resources available to his customers.

Thus, the district court concluded, "balancing the equities and consideration of the public interest weighs in favor of granting an injunction because of the irreparable harm that Stinson's conduct causes the Government and, most importantly, the harm to Stinson's customers."

Accordingly, the district court granted the motion and ordered that "Stinson, individually and doing business as LBS Tax Services and Nation Tax Services, LLC . . . is preliminarily enjoined . . . from acting as a federal tax return preparer and assisting in, advising, or directing the preparation or filing of federal tax returns, amended returns, or any other federal tax documents or forms for any

person or entity other than himself." It also ordered him to "immediately close all tax return preparation stores that he currently owns directly or through any entity" until further order of the court.

## DISCUSSION

### I.

"We review the ultimate decision of whether to grant a preliminary injunction for abuse of discretion, but we review *de novo* determinations of law made by the district court en route." *United States v. Endotec, Inc.*, 563 F.3d 1187, 1194 (11th Cir. 2009) (quoting *Owner–Operator Independent Drivers Ass'n, Inc. v. Landstar System, Inc.*, 541 F.3d 1278, 1293 (11th Cir. 2008)). "However, we review 'findings of fact upon which the decision to grant equitable relief was made under the clearly erroneous standard.'" *Id.* (quoting *Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1287 (11th Cir. 2006).

### II.

"A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public

6

interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). On appeal, Stinson argues that the Government failed to make that showing and also asserts numerous other challenges to the Government's evidence and the district court's determinations.

## A.

The Government sought injunctive relief in this case under I.R.C. §§ 7402, 7407, and 7408. Section 7402(a) grants a district court broad authority to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws," authority that is "in addition to and not exclusive of any and all other remedies" available to enforce the internal revenue laws.

Under § 7407, a district court is authorized to enjoin a tax return preparer from specified conduct, including conduct subject to penalty under I.R.C. §§ 6694 or 6695, and "engaging in . . . fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws." If such conduct has been continual or repeated, the court may enjoin a preparer from preparing any federal tax returns if it finds that a narrower injunction would be insufficient to prevent further interference with the administration of the tax laws. *Id.*; *see United States v. Ernst & Whinney*, 735 F.2d 1296, 1302–03 (11th Cir. 1984).

Tax return preparers violate §§ 6694(a)  and 6695 by understating a taxpayer's liability due to an unreasonable position, "reckless[ly] or intentional[ly] disregard[ing] of [IRS] rules or regulations," not identifying themselves as the paid preparer of a return, or claiming the Earned Income Tax Credit without complying with the statutory due diligence requirements. I.R.C. §§ 6694(a), (b), 6695(c), (g). Once the Government establishes any of the violations enumerated in § 7407, it need only demonstrate that "injunctive relief is appropriate to prevent recurrence of such conduct." § 7407(b)(2); *see Ernst & Whinney*, 735 F.2d at 1303.

Under § 7408, a district court is authorized "to enjoin any person from further engaging in specified conduct," including acts subject to penalty under I.R.C. § 6701, if the court finds that the person "has engaged in" such conduct and if "injunctive relief is appropriate to prevent recurrence of such conduct." Section 6701(a) imposes a penalty on any person who: (1) "aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document"; (2) "knows (or has reason to believe) that such portion will be used in connection with a material matter arising under the internal revenue laws"; and (3) "knows that such portion (if so used) would result in an understatement of the liability for tax of another person." Violations of § 6701(c) include "ordering (or otherwise causing) a subordinate to do an act," as

8

well as "knowing of, and not attempting to prevent, participation by a subordinate in an act."

**B**.

The Government presented substantial evidence supporting its request for injunctive relief under all three provisions, including the deposition testimony of over 25 of the 49 Stinson customers,[3] as well as numerous returns and other tax documents that had been prepared and filed for these customers at Stinson's stores. According to the Government, this evidence comprised only a "fraction of what the government will present at trial."

The Government's evidence showed marked patterns followed by Stinson in preparing customers' returns. For instance, many of the returns and depositions revealed frequent fabricating and inflating of numbers shown on Schedule A of the Form 1040; fabricated and inflated deductions for unreimbursed employee expenses, such as purported business mileage using a personal vehicle; and personal expenses, such as expenses for cable television, that had been wrongly claimed as business expenses.[4] Several of Stinson's customers even testified that

---

[3] The customers hailed from all four states in which Stinson's stores are located, and their returns were prepared and filed by Stinson over several years.

[4] For instance, one 2013 return claimed $75,586 in itemized deductions, $45,930 of which were attributable to purported unreimbursed employee expenses where the customer reported only $32,492 of income from his job as a corrections officer. However, the customer testified that he did not know where the numbers on his Schedule A came from, and that the return preparer had not reviewed these numbers with him before filing the return.

Stinson had listed on a Schedule C filed with their returns businesses that did not exist and that the customers had never discussed with the preparer. Customers also commonly testified that they had not given the preparers inaccurate information and that preparers put information on their returns without asking the customer. The Government also offered substantial evidence that Stinson contrived education expenses and falsely claimed refundable education credits, such as the American Opportunity Education Credit.[5]

Preparers must make "reasonable inquiries" to confirm that a customer is entitled to the EITC, document a preparer's compliance with the requirements, and keep that documentation for three years. 26 C.F.R. § 1.6695-2. However, Stinson's preparers checked boxes on the Form 8867 indicating that they had completed a "Paid Preparer's Earned Income Credit Checklist," even though they never received information or documentation from customers.

---

In another return, $12,262 was listed in employee expenses—roughly 65% of the customer's reported employment income of $18,619—although the customer testified that he had no such expenses. The return also reported over 21,000 business miles, despite the fact that the customer did not drive his car for work.

[5] Stinson asserts that not only is there "no evidence that Mr. Stinson committed fraud," there is "evidence that he spent more than $100,000 in the last two (2) years to provide IRS-accredited training for his managers and tax preparers[,] including $20,000 he paid to tax consultant Herman Cruz and $8,000 he paid to CPA monitor Paulette Smith." While such expenditures may be laudable, they do not erase the substantial inaccuracies and inflations that are rife throughout the filings prepared by Stinson and his employees.

Stinson charged customers significant return preparation fees—often upwards of $900—and did not inform them how much they were charged. Moreover, additional fees were tacked on to the already high return preparation charge—amounting to prices which Hermen Cruz, the business training consultant hired by Stinson, described as "very excessive."

Overall, this evidence establishes a widespread pattern of highly inaccurate returns being filed by preparers at Stinson's offices over several years, based on practices that are, at best, grossly negligent and incompetent, and at worst, willful and predatory. This evidence was clearly sufficient to justify the district court's exercise of the broad powers set forth in § 7402(a) to use injunctive relief to ensure the proper "enforcement of the internal revenue laws." The evidence also strongly indicates that Stinson and his return preparers "engaged in . . . fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws" in violation of § 7407(b)—which covers conduct of preparers and supervisors that claim unreasonable positions and/or otherwise recklessly or intentionally disregard IRS rules and regulations in violation of § 6694. And finally, as to § 7408, the evidence demonstrates that Stinson and his preparers engaged in conduct subject to penalty under § 6701, in that they (1) prepared Schedules A and C containing gross misrepresentations; (2) bypassed EITC due diligence requirements; and (3) prepared false claims for education

11

credits—actions that they knew directly and improperly reduced customers' tax liabilities. *See* I.R.C. § 6701(a)(2).[6]

Stinson has failed to provide any evidence to rebut the weight of evidence supporting the Government's claims—which was surely sufficient to establish that the Government is substantially likely to prevail on the merits at trial.

## C.

Stinson contends that the district court failed to apply the proper standard, given that it did not state that the Government is "substantially likely" to prevail on the merits. *See Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1307 (11th Cir. 2010) ("[A] district court may grant a preliminary injunction only if the movant establishes . . . a *substantial* likelihood of success on the merits of the underlying case . . . ." (emphasis added)). However, this court has never suggested that its articulation of the first factor is in any way inconsistent with the Supreme Court's articulation of the requirement that the claim be "*likely* to succeed on the merits." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (emphasis added). In fact, this court recently recognized that the two articulations were consistent when, quoting *Winter*, it stated that in order to obtain a preliminary injunction—as opposed to a permanent injunction—"the plaintiff must show a likelihood of success on the merits rather than actual success." *Jysk Bed'N Linen v. Dutta-Roy*,

---

[6] Not only did the Government introduce evidence of Stinson's preparers' erroneously filed tax returns, but also evidence of returns improperly filled out by Stinson himself.

810 F.3d 767, 774 n.16 (11th Cir. 2015). Thus, Stinson's attack on the district court's wording does not avail him.

Stinson also challenges the preliminary injunction ordered by the district court on the ground that it disrupts the status quo, in that the damage wrought to his business renders a "trial on the merits superfluous."[7] Again he is mistaken. The Government's complaint sought a permanent injunction, to put Stinson out of the tax preparation business forever. The preliminary injunction, on the other hand, remains in effect only during the lifespan of this litigation. Moreover, as we have stated, there is no "particular magic in the phrase 'status quo,'" and the purpose of a preliminary injunction is "to preserve the court's ability to render a meaningful decision on the merits." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). Because the injunction issued in this case has no impact on the court's ability to render a meaningful decision on the merits, it does not impermissibly alter the status quo.[8]

---

[7] Relying heavily upon *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975-76 (10th Cir. 2004) (en banc), Stinson also implies that his "status quo" argument imposes a higher burden on the Government in obtaining a "disfavored" preliminary injunction. Unlike the Tenth Circuit, however, we do not have a modified likelihood-of-success standard, and we have always required each of the four preliminary-injunction elements to be "clearly established" before imposing the "drastic remedy" of a preliminary injunction. *See Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). Thus there is not an even higher burden on "disfavored" injunctions, given that our precedents already impost a high burden on obtaining preliminary injunctions.

[8] Stinson further claims that the district court should have denied the Government relief under the doctrine of laches. However, laches is an affirmative defense that must be affirmatively pleaded, Fed. R. Civ. P. 8(c), and Stinson never asserted this defense in his answer. Accordingly,

Stinson also cites *Carlson v. United States*, 754 F.3d 1223 (11th Cir. 2014), for the proposition that "mere erroneous tax returns" and "taxpayer testimony as to the inaccuracy of their tax returns" "are insufficient to prove tax preparer 'fraud.'" However, Stinson's contention misapprehends the holding in *Carlson* and its application to the evidence in this case. *Carlson* states that, to prove a violation of I.R.C. § 6701, "it is insufficient for the Government to only present evidence that some error existed on a return," or to rely merely on "the auditors' conclusions that the [customers] did not substantiate deductions" during an audit. 754 F.3d at 1230. This case is distinguishable, however, given that audit results merely show an auditor's conclusions regarding the accuracy of a return, and the Government here relied on more compelling evidence—taxpayer and preparer testimony—to show that Stinson and preparers he employed falsified returns. Moreover, *Carlson* involved "a software program that automatically populated the return with information from a client's previous tax return," *id.* at 1225, and so the question of whether the defendant there knew what data was included in the individual returns was even more of an issue than it is here. Perhaps most importantly, *Carlson* involved an appeal from the disposition of the claims against the defendant on the merits—which required that the Government "prove its case under I.R.C. § 6701

---

Stinson may not raise the defense of laches for the first time on appeal. *See Moore v. Tangipahoa Parish School Board*, 594 F.2d 489, 495 (5th Cir. 1979).

by clear and convincing evidence," *id.*—while this case simply requires that the Government prove that it is substantially likely that it will succeed on the merits.

Moreover, although *Carlson* addressed the proper standard of proof under I.R.C. § 6701, the Government is not required to prove fraud or a violation of § 6701 to obtain injunctive relief. Rather, the Government may demonstrate conduct referred to in I.R.C. § 7407(b), and it is sufficient under I.R.C. § 7402 for the Government to prove a pattern of gross negligence or recklessness, so long as injunctive relief is "necessary or appropriate for the enforcement of the internal revenue laws." § 7402(a). Thus the district court may grant a preliminary injunction as long as the Government demonstrates a substantial likelihood of prevailing under the relevant statutes.

And finally, as he contended below, Stinson protests that the sample of tax returns offered by the Government was unreliable since it was insufficient in size and was a "non-random" selection of returns that Stinson prepared. The Government is "not required to prove [its] case in full at a preliminary injunction hearing," *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), however, and it presented excerpts from over half of the customer depositions that it took during discovery, along with a significant amount of documentary evidence. Moreover, Stinson cites to no case for the proposition that the Government is required to proffer a statistically sufficient or random sample of available evidence to support

its claims. Stinson was free to rebut the Government's evidence with tax returns and testimony of his own, but he ultimately failed to do so. Indeed, Stinson presented little evidence at all in this regard. Rather, he mostly limited his approach to attacking the Government's methodology and attempting to undermine the Government's evidence by arguing that it "consists solely of the un-cross examined testimony of several intimidated taxpayers" who, according to Stinson, likely lied in their depositions.

Moreover, Stinson has failed to provide any authority for his argument that the United States should have presented an expert witness or submitted only tax returns that had been audited by the IRS to support its claims of Stinson's improper practices.  The Government did, in fact, present substantial evidence that Stinson prepared and filed tax returns containing information that the customers testified was erroneous and that was not provided by them.  And although a comprehensive audit may have determined the correct amount of each customer's tax deficiency, that information is not critical to the Government's claims that the returns were incompetently or fraudulently prepared at this stage in the litigation.[9]

Overall, Stinson has failed to show that the district court abused its discretion in finding that the Government would likely succeed on the merits.

---

[9] Stinson also asserts that the Government failed to prove he committed fraud by clear and convincing evidence. Again, however, the Government is "not required to prove [its] case in full at a preliminary injunction hearing." *Camenisch*, 451 U.S. at 395.

16

**D**.

Each return Stinson improperly prepares costs the Government money, and in total, the Government asserts that the tax revenue lost from Stinson's practices may be upwards of $19 million. Moreover, individual taxpayers—many of whom are "underprivileged, undereducated poor people,"—are not only exposed to increased tax liability because they have submitted falsified tax returns, but they are also charged "very excessive" fees for preparing what in many cases would be very simple, inexpensive returns to process. Accordingly, the Government and the public would suffer further irreparable harm without an injunction, and the public interest favors an injunction against Stinson.

Stinson protests that he will suffer irreparable harm in the loss of "more than $3,000 per day" in income. However, any loss he may suffer from the enjoining of his wrongful conduct in no way outweighs the egregious harm that the Government and Stinson's customers have suffered. And of course, Stinson is free to find other employment (not to mention the fact that, as revealed in his deposition, he apparently owns a real estate business). Thus, the balance of the injuries in this case, as well as the compelling public interest, heavily favors the Government and supports the district court's preliminary injunction order.

And as a final point, a more limited injunction would not suffice to prevent the substantial harm that Stinson would likely continue to cause if not preliminarily

17

enjoined. The preliminary injunction ordered by the district court did not merely enjoin Stinson from engaging in the conduct alleged by the Government; rather, it broadly enjoined Stinson from, among other things, acting as a return preparer. Over the span of several years, Stinson has continually filed returns misrepresenting his customers' income, deductions, and income tax liability—and he has continued to do so even after the Government filed its complaint in this action. The Government has no other adequate remedy available with which to prevent the extreme harm caused by Stinson to the United States, to the tax system, and to Stinson's customers.

"Appellate review of . . . a decision [to grant a preliminary injunction] is very narrow," *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 968 (11th Cir. 2005) (quoting *Revette v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 740 F.2d 892, 893 (11th Cir. 1984) (per curiam)), and Stinson has failed to establish that the district court abused its discretion in any way.

**AFFIRMED**.