[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13785
_____

D. C. Docket No. 1:11-cv-20684-JAL

ILIANA GARRIDO,
K.G. by and through his next friend, et al.,

Plaintiffs-Appellees,

versus

INTERIM SECRETARY, FLORIDA AGENCY FOR
HEALTH CARE ADMINISTRATION,
Elizabeth Dudek,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 20, 2013)

Before HULL, MARTIN, Circuit Judges, and BOWEN,* District Judge.

_____

*Honorable Dudley H. Bowen, Jr., United States District Judge for the Southern District
of Georgia, sitting by designation.

HULL, Circuit Judge:

Plaintiffs-Appellees K.G., I.D., and C.C., through their next friends, sued Defendant-Appellant Elizabeth Dudek, in her official capacity as Interim Secretary for the Florida Agency for Health Care Administration.  Plaintiffs alleged that Dudek violated the Medicaid Act by denying Medicaid coverage of applied behavioral analysis to treat Plaintiffs' autism spectrum disorders.  After a four-day bench trial, the district court granted Plaintiffs a permanent injunction, concluding that Medicaid covered this treatment for the Plaintiffs.  K.G. ex rel. Garrido v. Dudek, 864 F. Supp. 2d 1314 (S.D. Fla. 2012).   The district court subsequently granted Plaintiffs a declaratory judgment.  K.G. ex rel. Garrido v. Dudek,  1:11-cv-20684-JAL (D.E. 144) (S.D. Fla. June 14, 2012).  This appeal concerns the scope of the permanent injunction and declaratory judgment.  After review and with the benefit of oral argument, we affirm in part, but reverse and remand to the district court for modification of the permanent injunction and declaratory judgment.

## I. BACKGROUND

To understand the issues in this appeal, we briefly outline the Medicaid program and its coverage of certain medically necessary services.

### A.    Regulatory Framework

Medicaid is a cooperatively funded federal-state program designed to help states provide medical treatment to their needy citizens.  States devise and fund

their own medical assistance programs, subject to the requirements of the federal Medicaid Act, and the federal government provides partial reimbursement. See 42 U.S.C. §§ 1396b(a), 1396d(b). A state's participation in the Medicaid program is voluntary, but once a state chooses to participate it must comply with federal statutory and regulatory requirements. See Alexander v. Choate, 469 U.S. 287, 289 n.1, 105 S. Ct. 712, 714 n.1 (1985). All states, including Florida, participate in the Medicaid program. Florida administers its Medicaid program through the Agency for Health Care Administration ("AHCA"). See Fla. Stat. §§ 409.901(2), 409.902.

Under the Medicaid Act, participating states must provide "early and periodic screening, diagnostic, and treatment services" ("EPSDT") for Medicaid-eligible minors under the age of 21. 42 U.S.C. § 1396d(a)(4)(B). The EPSDT program mandates four specific categories of services: screening, vision, dental, and hearing services. 42 U.S.C. § 1396d(r)(1)–(4). Additionally, the catch-all EPSDT provision in § 1396d(r)(5)—the most relevant to this appeal— mandates that participating states provide to Medicaid-eligible minors "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in [§ 1396d(a)] to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." Id. § 1396d(r)(5).

3

In turn, § 1396d(a) lists 29 covered categories of care and services, including preventive and rehabilitative services. Id. § 1396d(a)(13). Thus, under § 1396d(r)(5), a state must provide a service listed in § 1396d(a) to a Medicaid-eligible minor—even if the state does not provide that service to Medicaid-eligible adults—if the service is necessary to "correct or ameliorate" a condition or defect discovered during an EPSDT screen.

Another relevant component of the federal Medicaid Act is its comparability requirement provision, which ensures equitable treatment of beneficiaries. Under this provision, "the medical assistance made available to any [eligible] individual . . . shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual." 42 U.S.C. § 1396a(a)(10)(B)(i); see also id. § 1396a(a)(10)(B)(ii).

However, federal regulations provide that each service covered by Medicaid "must be sufficient in amount, duration, and scope to reasonably achieve its purpose" and the state Medicaid agency "may place appropriate limits on a service based on . . . medical necessity." 42 C.F.R. § 440.230. Although neither the Medicaid Act nor its implementing regulations explicitly define the standard of "medical necessity," "it has become a judicially accepted component of the federal legislative scheme." Moore ex rel. Moore v. Reese, 637 F.3d 1220, 1232 (11th Cir. 2011). The Medicaid Act and its implementing regulations grant the authority

4

to the states to set reasonable standards for the terms "necessary" and "medical necessity." See 42 U.S.C. § 1396a(a)(17); 42 C.F.R. § 440.230(d); see also Moore, 637 F.3d at 1255. Thus, as permitted by the federal Medicaid Act, Florida statute authorizes Medicaid coverage for only those services that are "medically necessary." Fla. Stat. §§ 409.905, 409.906. Under Florida's regulatory scheme, "medically necessary" or "medical necessity" means that

> the medical or allied care, goods, or services furnished or ordered must . . . [m]eet the following conditions:
> 1.  Be necessary to protect life, to prevent significant illness or significant disability, or to alleviate severe pain;
> 2.  Be individualized, specific, and consistent with symptoms or confirmed diagnosis of the illness or injury under treatment, and not in excess of the patient's needs;
> 3. Be consistent with generally accepted professional medical standards as determined by the Medicaid program, and not experimental or investigational;
> 4.  Be reflective of the level of service that can be safely furnished, and for which no equally effective and more conservative or less costly treatment is available statewide; and
> 5.  Be furnished in a manner not primarily intended for the convenience of the recipient, the recipient's caretaker, or the provider.

Fla. Admin. Code r. 59G-1.010(166)(a).

Accordingly, for a treatment to be "medically necessary" and covered by Florida Medicaid, the treatment must be, inter alia, "individualized [and] specific," "not in excess of the patient's needs," and "not experimental." Id. A treatment is "experimental" when, for example, "[r]eliable evidence shows that the consensus among experts regarding the drug, device, or medical treatment or procedure is that

5

further studies or clinical trials are necessary to determine its maximum tolerated dose, toxicity, safety, or efficacy as compared with the standard means of treatment or diagnosis." Fla. Admin. Code r. 59G-1.010(84)(a)3.

Florida's Medicaid coverage of behavioral health services is found at Florida Administrate Code rule 59G-4.050, which incorporates by reference the Florida Medicaid Community Behavioral Health Services Coverage and Limitations Handbook (the "Handbook"). See Fla. Admin. Code r. 59G-4.050(2)(3). The Handbook delineates the specific behavioral health services that are covered by Florida's Medicaid program. As relevant here, a portion of the Handbook, entitled "Service Exclusions," stated that "Medicaid does not pay for community behavioral health services for treatment of autism [or] pervasive developmental delay." Handbook Rule 2-1-4.

## B.    Factual Background

Plaintiffs K.G., I.D., and C.C. are minors under the age of 21who receive Florida Medicaid due to their disabling conditions and their parents' income status. All three Plaintiffs were diagnosed with autism or autism spectrum disorders ("ASD")[1] during EPSDT screens and were all prescribed applied behavioral analysis ("ABA") treatment by their treating physicians. ABA is a type of early

---

[1]Full-blown autism "is a complex neurodevelopmental disability that generally appears during the first three years of life and impacts the normal development of the brain, resulting in impairments of social interaction, verbal and non-verbal communication, leisure or play activities, and learning." Autism is one condition in a spectrum of other pervasive development disorders, collectively called autism spectrum disorders ("ASD").

intensive behavioral interaction health service that uses a structured, one-on-one program to treat the behavioral problems associated with ASD.

Because Plaintiffs' conditions were discovered during EPSDT screens, Florida Medicaid must provide any treatment "necessary" "to correct or ameliorate" those conditions, whether or not the treatment is covered by the state's plan.  See 42 U.S.C. § 1396d(r)(5).  As noted above, such services were excluded from Florida Medicaid coverage as memorialized in Handbook Rule 2-1-4.  Furthermore, after the lawsuit was filed, AHCA determined that community behavioral health services like ABA were experimental and thus not medically "necessary" for the treatment of ASD.  See Fla. Admin. Code r. 59G-1.010(166)(a)3.  In accordance with its policy at that time, AHCA denied Plaintiffs' requests for Medicaid coverage of ABA treatment.

## C.    Procedural History

Plaintiff K.G., through his next friend, Iliana Garrido, filed his complaint on February 28, 2011 against Elizabeth Dudek, the Secretary of AHCA and the State of Florida's Medicaid administrator.   K.G. alleged that, under 42 U.S.C. § 1983, AHCA's denial of ABA treatment violated the Medicaid Act's EPSDT provision and comparability provision.

In his complaint, K.G. sought: (1) a declaration that the Handbook's exclusion of behavioral health services for treatment of ASD violates the Medicaid

7

Act; and (2) a preliminary and permanent injunction directing AHCA to: (a) amend the Handbook "to delete the exclusion of behavioral health services for treatment of autism and pervasive developmental delay"; (b) amend the Handbook "to include coverage of medically necessary behavioral health services, including ABA, for treatment of autism spectrum disorders in children and youth under age 21"; and (c) "[e]nsure that Plaintiff receives Medicaid coverage for ABA therapy consistent with the recommendations of his treating physician."

On March 10, 2011, K.G. filed his First Amended Motion for Preliminary Injunction.  After a hearing, a magistrate judge issued a report recommending the district court grant the motion.  On November 1, 2011, the district court adopted the magistrate judge's report and directed the Secretary to "provide Medicaid coverage for K.G.'s ABA therapy as prescribed by his treating physician."  K.G. ex rel. Garrido v. Dudek, 839 F. Supp. 2d 1254, 1268 (S.D. Fla. 2011).  This preliminary injunction only addressed K.G.'s claims.

Meanwhile, on September 12, 2011, K.G. filed his First Amended Complaint, in which I.D. and C.C. were added as plaintiffs seeking the same relief as K.G.

On October 21, 2011, the parties filed cross-motions for summary judgment. The district court denied the motions, finding disputed issues of fact concerning AHCA's determination that ABA treatment was experimental, and set the case for

8

a bench trial.

Evidence adduced at the bench trial included testimony from AHCA employees concerning the agency's process for determining whether a certain treatment or service should be covered under Florida's Medicaid plan. K.G. ex rel. Garrido v. Dudek, 864 F. Supp. 2d 1314, 1322 (S.D. Fla. 2012). AHCA employees testified further that the standard process was not followed in the agency's determination of whether ABA was experimental. Id. at 1322–24. Plaintiffs presented evidence from numerous experts that ABA is the standard means of treating ASD. Id. at 1325–26. Plaintiffs also presented evidence concerning the necessity of ABA treatment in Plaintiffs' individual cases. Id. at 1327.

After trial, the district court announced from the bench that it would grant Plaintiffs a permanent injunction. The district court concluded that ABA falls within the scope of 42 U.S.C. § 1396d(a)(13) as a preventive or rehabilitative service, and thus the state of Florida is required to provide that service to Medicaid-eligible minors under age 21 if necessary to correct or ameliorate a condition discovered in an EPSDT screen under § 1396d(r)(5). Further, the district court found "that applied behavioral analysis is medically necessary and not experimental, as defined under Florida statutory and administrative law and federal law." Consequently, the "determination by AHCA that ABA is

experimental was unreasonable in its process, was arbitrary and capricious and unreasonable in its conclusion."

Based on these findings, the district court concluded that Plaintiffs had clearly established that Florida's exclusion of ABA for Medicaid-eligible minors with ASD violated the EPSDT and comparability provisions of the federal Medicaid Act.  The district court stated that "[t]he Medicaid population of children diagnosed with autism and/or autism spectrum disorder [is] deserving and will be given ABA treatment in the state of Florida."  The district court found further

> that there is irreparable injury if the Plaintiffs and all persons under 21 who receive Medicaid assistance in the state of Florida do not receive applied behavioral analysis treatment, those persons under 21 who have been diagnosed with autism and/or autism spectrum disorder.
>      Therefore, as of this moment, I enjoin the Defendants from enforcing the [Handbook] Rule 2-1-4 as it relates to autism, and the State of Florida is hereby ordered to provide ABA treatment when it is appropriately prescribed by a medical professional immediately.

The district court said that its oral ruling would be supplemented by a written order.

A few days later, the district court entered an order issuing the permanent injunction.  In that order, the district court restated its findings that "ABA is 'medically necessary' and is not 'experimental' as defined under Florida administrative and federal law," K.G. ex rel. Garrido, 864 F. Supp. 2d at 1320, and "that the determination by AHCA that ABA is experimental was arbitrary, capricious, and unreasonable both in its process and in its conclusion," id. at 1321–

10

22.

In light of its findings, the district court concluded that Plaintiffs had satisfied all four factors necessary to obtain a permanent injunction, because: (1) Plaintiffs had established AHCA's exclusion of ABA coverage violated the Medicaid Act; (2) "there is no adequate remedy at law for the violation of this right"; (3) "there would be irreparable injury to Plaintiffs and all Medicaid-eligible minors in Florida who have been diagnosed with autism or ASD if these children do not receive ABA pursuant to this injunction"; and (4) the public interest weighed in favor of issuing the injunction and further, "paying for the cost of ABA for autistic children will ultimately save public funds." Id. at 1327; see also Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1208 (11th Cir. 2008) (describing four-factor test for obtaining a permanent injunction).

The district court ordered the following relief:

1.      As of 10:50 a.m. on March 26, 2012, Defendant is enjoined from enforcing [Handbook] Rule 2-1-4 as it relates to autism, Autism Spectrum Disorder, and Applied Behavioral Analysis treatment.

2.      As of 10:50 a.m. on March 26, 2012, the State of Florida is hereby ordered to provide, fund, and authorize Applied Behavioral Analysis treatment to Plaintiffs K.G., I.D., and C.C., as well as to all Medicaid-eligible persons under the age of 21 in Florida who have been diagnosed with autism or Autism Spectrum Disorder, as prescribed by a physician or other licensed practitioner.

3.      Defendant shall notify all community behavioral health services providers enrolled in the Medicaid program that ABA is now a covered service for children who have been diagnosed with autism or

11

Autism Spectrum Disorder.

4.    Defendant shall notify all physicians enrolled in the Medicaid program who may provide EPSDT screens that ABA is now a covered service for children who have been diagnosed with autism or Autism Spectrum Disorder.

5.    Defendant shall designate an authorization code for ABA treatment and notify all persons in [sic] listed in numbers 3 and 4 of such designation.

6.    Defendant shall take whatever additional steps are necessary for the immediate and orderly administration of ABA treatment for Medicaid-eligible persons under the age of 21 who have been diagnosed with autism or Autism Spectrum Disorder.

7.    Defendant shall certify in an affidavit filed with the Court within seven (7) calendar days that numbers 3 through 6 of this Order have been accomplished.

K.G. ex rel. Garrido, 864 F. Supp. 2d at 1327–28.

The district court also stated that "[t]he [c]ourt will address Plaintiffs' claims regarding a declaratory judgment in a forthcoming Order." Id. at 1327 n.28.

Two months later, the district court directed the parties to file status reports concerning their respective positions on a declaratory judgment,  and the parties complied.  Plaintiffs' status report included a 42-paragraph proposed declaratory judgment order. Three days later, the district court marked through the word "proposed" in the heading of Plaintiffs' proposed declaratory judgment order and signed and entered that document as an order of the court.

## II. STANDARD OF REVIEW

"We review the decision to grant an injunction and the scope of the injunction for abuse of discretion," Angel Flight of Ga., Inc., 522 F.3d at 1208, but we "review the district court's underlying legal conclusions de novo," Am. Fed. of State, Cnty., & Mun. Emps. v. Scott, 717 F.3d 851, 862 (11th Cir. 2013). Similarly, we review the district court's grant of declaratory relief for an abuse of discretion. See Frulla v. CRA Holdings, Inc., 543 F.3d 1247, 1251 (11th Cir. 2008). Under that abuse-of-discretion standard, "we will leave undisturbed a district court's ruling unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005).

## III. DISCUSSION

At the outset we note that Defendant Dudek does not challenge either Plaintiffs' entitlement to ABA treatment as a covered Medicaid service or that section of the permanent injunction invalidating the Handbook Rule excluding ABA treatment from Medicaid coverage.

Rather, Dudek appeals the scope of the permanent injunction and declaratory judgment, contending that both go beyond what was necessary to afford Plaintiffs complete relief. Dudek argues that the district court entered an injunction that

13

impermissibly provides that all autistic Medicaid recipients under the age of 21 with a prescription for ABA are automatically entitled to ABA treatment, regardless of the medical necessity of ABA treatment in any individual case. Thus, Dudek contends, the injunction interferes with Florida's policy decision to limit Medicaid coverage to medically necessary services, and it deprives AHCA of its statutory responsibility to assess the medical necessity of prescribed services in individual cases. Plaintiffs respond that the permanent injunction and declaratory judgment do not eliminate individual medical necessity determinations.

It is axiomatic that "[i]njunctive relief should be limited in scope to the extent necessary to protect the interests of the parties." Keener v. Convergys Corp., 342 F.3d 1264, 1269 (11th Cir. 2003). "That rule dovetails with the requirement of Federal Rule of Civil Procedure 65(d) that every injunction state in specific terms and reasonable detail the conduct that it restrains or requires." Alley v. U.S. Dep't of Health & Human Servs., 590 F.3d 1195, 1205 (11th Cir. 2009) (citing Fed. R. Civ. P. 65(d)). "[T]he specificity requirements of Rule 65(d) are 'designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood.'" S.E.C. v. Goble, 682 F.3d 934, 950 (11th Cir. 2012) (quoting Schmidt v. Lessard, 414 U.S. 473, 476, 94 S. Ct. 713, 715 (1974)). "But, we will not apply Rule 65(d) rigidly, and we determine the

14

propriety of an injunctive order by inquiring into whether the parties subject thereto understand their obligations under the order." Id. (internal quotation marks omitted).

We turn to the text of the permanent injunction. It is true that the district court's order for injunctive relief is broadly worded and is not explicitly limited to the provision of "medically necessary" ABA treatment for eligible recipients. In the final section of the injunction, Paragraph 2 states that "the State of Florida is hereby ordered to provide, fund, and authorize Applied Behavioral Analysis treatment to Plaintiffs K.G., I.D., and C.C., as well as to all Medicaid-eligible persons under the age of 21 in Florida who have been diagnosed with autism or Autism Spectrum Disorder, as prescribed by a physician or other licensed practitioner." K.G. ex rel. Garrido, 864 F. Supp. 2d at 1328 (emphasis added). Likewise, Paragraph 6 states that "Defendant shall take whatever additional steps are necessary for the immediate and orderly administration of ABA treatment for Medicaid-eligible persons under the age of 21 who have been diagnosed with autism or Autism Spectrum Disorder." Id. (emphasis added).

Despite this broad language in the district court's published ruling, we must also consider the context in which this relief was ordered. Alley, 590 F.3d at 1208 n.12 ("Although the parties to an injunction must be able to ascertain from the four corners of the order precisely what acts are forbidden, that rule does not preclude

15

an examination of context." (citations omitted)).  Earlier in the order, the district court found that "ABA is 'medically necessary' and is not 'experimental' as defined under Florida administrative law and federal law."  K.G. ex rel. Garrido, 864 F. Supp. 2d at 1320.  After this statement, the district court cited Florida's administrative rule delineating what is required for a treatment to be "medically necessary," and specifically cited subsection 3 stating that a medically necessary treatment may not be experimental.  Id. (citing Fla. Admin. Code r. 59G-1.010(166)(a)(3) (in order to be "medical necessary" or a "medical necessity," treatment must "[b]e consistent with generally accepted professional medical standards as determined by the Medicaid program, and not experimental or investigational")).  Moreover, the district court followed this finding and citation with the statement that "[t]he role of the [district c]ourt is to decide whether AHCA's determination that ABA is experimental was reasonable."  Id. at 1321 (emphasis added).  Plainly, despite the district court's broad order of relief at the end of the permanent injunction, the district court appeared to confine its analysis to a determination of whether ABA is experimental—one consideration, among many, to be used in AHCA's determination of whether a treatment is medically necessary in an individual patient's case.  See Fla. Admin. Code r. 59G-1.010(166)(a).

Indeed, the question of individual medical necessity determinations—other

16

than those of Plaintiffs K.G., I.D., and C.C.—was explicitly not before the district court. In the parties' amended joint pretrial stipulation, the parties agreed that a settled issue of law was that "[f]or any individual Medicaid recipient, the recipient has the burden of proving that a service is medically necessary." Instead, the focus of the evidence at the bench trial and the district court's findings was whether ABA treatment is experimental and consequently whether AHCA could categorically deny this form of treatment as being, in its judgment, medically unnecessary. Still, the language of the district court's ruling made it appear that the district court had made a wholesale determination that ABA is always medically necessary to treat a Medicaid-eligible minor's ASD.

However, in denying Dudek's motion for a partial stay pending this appeal, the district court said that its permanent injunction did not eliminate individual medical necessity determinations. We accord some weight to the fact that the district court charged with enforcing the injunction is enforcing the injunction in the way that Dudek advocates. See Alley, 590 F.3d at 1202 ("[G]reat deference is due the interpretation placed on the terms of an injunctive order by the court who issued and must enforce it.'" (quoting Williams v. City of Dothan, Ala., 818 F.2d 755, 760 (11th Cir. 1987))). In fact, the district court has already denied one motion for contempt filed by pro se nonparties and premised on the misunderstanding that the district court's permanent injunction order automatically

entitled those nonparties to Medicaid coverage of ABA treatment.

In sum, the district court did not abuse its discretion in issuing a permanent injunction that overrules AHCA's determination that ABA is experimental (and AHCA's larger determination that ABA is never medically necessary) and requires Medicaid coverage of this treatment. And it is apparent that the district court is enforcing the injunction in that manner. However, because the language in the injunction's final section is out of step with the district court's analysis and what was actually decided, we vacate the injunction in part and remand to the district court to modify Paragraphs 2 and 6 to read as follows:

> 2.    As of 10:50 a.m. on March 26, 2012, the State of Florida is hereby ordered to provide, fund, and authorize Applied Behavioral Analysis treatment to Plaintiffs K.G., I.D., and C.C..[2]
> . . . .
> 6.    Defendant shall take whatever additional steps are necessary for the immediate and orderly administration of ABA treatment to Plaintiffs K.G., I.D., and C.C..[3]

For the same reasons described above, we vacate in part and remand the declaratory judgment with directions that the district court amend the declaratory judgment as follows:

---

[2] This modification deletes the part of paragraph 2 that formerly stated: "as well as to all Medicaid-eligible persons under the age of 21 in Florida who have been diagnosed with autism or Autism Spectrum Disorder, as prescribed by a physician or other licensed practitioner."

[3] This modification deletes the part of paragraph 6 that formerly stated: "for Medicaid-eligible persons under the age of 21 who have been diagnosed with autism or Autism Spectrum Disorder."

18

On page 6 of the declaratory judgment, the following should be added to the declaration concerning EPSDT:

> 29.  This declaration does not eliminate the Defendant's authority to make individual medical necessity determinations, in accordance with governing law and regulations.

On page 7 of the declaratory judgment, the following should be added to the declaration concerning comparability:

> 43.  This declaration does not eliminate the Defendant's authority to make individual medical necessity determinations, in accordance with governing law and regulations.

## IV. CONCLUSION

For the reasons set forth above, we affirm in part, but reverse and remand to the district court for modification of the injunction and declaratory judgment in the manner prescribed above.  The district court should publish the permanent injunction order, as revised, in its entirety and the declaratory judgment order, as revised, in its entirety so that each of the complete orders is available in one document.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**[4]

---

[4]Plaintiffs' motion for leave to file supplemental briefing, or, alternatively, to strike portions of Dudek's reply brief, carried with the case, is DENIED.