[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11412

_____

D.C. Docket No. 6:14-cv-01534-ACC-TBS


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASON P. STINSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 1, 2018)

Before ED CARNES, Chief Judge, and NEWSOM and SILER,[*] Circuit Judges.

SILER, Circuit Judge:

Defendant Jason Stinson appeals the district court's judgment of a permanent injunction enjoining him from preparing federal tax returns and a $949,952.47 disgorgement order.  For the following reasons, we AFFIRM.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Stinson began his tax preparation career in 2010 as a manager for LBS Tax Services ("LBS"), a storefront tax preparation business based in Orlando, Florida. Without prior experience or training in tax return preparation, in 2011 and 2012, he personally prepared individual tax returns for hundreds of customers.  By 2013, Stinson had become a franchise owner of ten LBS stores with locations in Florida, Georgia, Alabama, and North Carolina.[1]  Situated in low-income areas, Stinson's stores engaged in aggressive, "guerrilla marketing" and directly targeted "underprivileged, undereducated poor people."

The practice at Stinson's stores was to not charge an upfront fee for each tax return prepared for a customer but to extract the fee from the customers' tax refunds.  He often charged in excess of $600 per return, sometimes as much as

---

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

[1] Stinson subsequently renamed his business Nation Tax Services.

$999, usually without informing the taxpayer of the fee amount.[2]  The goal was to secure the maximum refund to satisfy the customer and deduct a larger fee.  To this end, Stinson and his tax preparers[3] would falsify customers' information to claim the maximum earned income tax credit ("EITC")[4] by: claiming fictitious dependents, fabricating unreimbursed employee business expenses and charitable contributions, and falsifying business income or expenses.

The Government filed a complaint in 2014 seeking, under §§ 7402, 7407, and 7408 of the Internal Revenue Code ("I.R.C."), to enjoin Stinson, "individually and doing business as LBS Tax Services and Nation Tax Services, LLC," from "acting as a federal tax return preparer or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than himself."  Specifically, the Government alleged that Stinson:

1. falsified deductions on Form 1040 Schedule A to reduce customers' taxable income by reporting personal expenses as business expenses and falsified unreimbursed employee expenses and charitable contributions;
2. falsified Form 1040 Schedule C deductions by fabricating businesses and reporting profits or losses from a false business or inflating profits and losses from an actual business;
3. claimed false education credits;
4. falsified customers' earned income tax credits;

---

[2] According to the Government, the national average fee for preparing and filing a basic Form 1040 is $159.

[3] For simplicity, we will refer to Stinson and his tax preparers collectively as "Stinson."

[4] The EITC is a refundable tax credit available to low-income workers and depends upon a multitude of factors, such as income, filing status, and number of dependents.  *See Sorenson v. Sec. of Treasury of U.S.*, 475 U.S. 851, 864 (1986).

5. failed to conduct proper due diligence; and
6. failed to disclose fees and provide customers complete copies of their tax returns.

These practices allowed Stinson to manipulate a customer's income to ensure that it fell within the "sweet spot" necessary to qualify for the EITC. The Government proffered deposition testimony and customer tax returns that exhibited fabricated numbers. This evidence revealed that Stinson had contrived expenses and falsely claimed other credits for customers, such as Household Help Income and the American Opportunity Education Credit. For example, Stinson prepared a tax return claiming qualified education expenses of $2,000 for a customer who never graduated from high school. One taxpayer testified that "I know I never claimed any charity on my income tax, never," yet his tax return prepared by Stinson's firm claimed $1,500 in charitable giving.

In 2015, the Government asked the district court to preliminarily enjoin Stinson from employing his tax return preparation business in order "[t]o prevent Stinson's continued and repeated fraud" during the pending trial proceedings. The district court granted this motion, and Stinson filed an interlocutory appeal. In September 2016, we affirmed the preliminary injunction. *United States v. Stinson*, 661 F. App'x 945, 946 (11th Cir. 2016).

In 2016, the district court held a six-day bench trial and heard testimony from dozens of taxpayer witnesses—former clients of Stinson's tax preparation

4

stores—all of whom testified that Stinson prepared inaccurate tax returns. The evidence at trial fully supported the Government's allegations. The Government proved that Stinson's business model involved falsifying his client's tax returns by fabricating expenses and deductions in order to produce tax refunds from which he would first subtract a hefty fee. Stinson failed to rebut the Government's evidence,[5] and he now appeals the district court's permanent injunction and disgorgement order.

## DISCUSSION

We review a judgment of a permanent injunction and disgorgement for abuse of discretion. *S.E.C. v. Levin*, 849 F.3d 995, 1001 (11th Cir. 2017); *Garrido v. Dudek*, 731 F.3d 1152, 1158 (11th Cir. 2013). We also review the denial of a motion for sanctions for abuse of discretion. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1303 (11th Cir. 2009).

### I.    Injunctive Relief

The district court granted a permanent injunction enjoining Stinson from his tax return preparation activities pursuant to I.R.C. §§ 7407, 7408, and 7402. For

---

[5] At trial, Stinson did not call a taxpayer witness of his own or present a single accurate tax return prepared by his stores. Instead, he called his employees who admitted to the incorrect tax returns but denied fault and blamed the customers for providing false information.

Stinson argued that taxpayers were unreliable witnesses because they would never admit to their own wrongdoing. However, the district court found the taxpayers' testimony was credible because in many of Stinson's cases the IRS had declined to impose a penalty against the taxpayer, finding the individual taxpayer showed no "intentional disregard" of tax laws.

5

the following reasons, we hold that the district court did not abuse its discretion in granting the injunction.

**Count I – Permanent Injunction Pursuant to I.R.C. § 7407**

Internal Revenue Code § 7407 reflects a congressional intent to prevent abuses by tax preparers in the reporting of client income tax liabilities. *United States v. Ernst & Whinney*, 735 F.2d 1296, 1302 (11th Cir. 1984).

> [I]n order to issue an injunction pursuant to § 7407, three prerequisites must be met: first, the defendant must be a tax preparer; second, the conduct complained of must fall within one of the four areas of proscribed conduct, § 7407(b)(1); and third, the court must find that an injunction is "appropriate to prevent the recurrence" of the proscribed conduct, § 7407(b)(2).

*Id.* at 1303. Here, the district court first determined that Stinson was a tax preparer under I.R.C. § 7701(a)(36) because he owned and operated the tax preparation stores, hired employees, trained employees, and profited from the business.

Second, with respect to the "proscribed conduct," I.R.C. § 7407(b)(1) states that such conduct includes violating §§ 6694 or 6695 or engaging in fraudulent or deceptive conduct that substantially interferes with the administration of the internal revenue laws. Section 6694(a) is implicated where an individual negligently understates tax liability. *Judisch v. United States*, 755 F.2d 823, 830 (11th Cir. 1985). By contrast, § 6694(b) imposes penalties on tax preparers who

6

prepare any return or claim for refund in a manner that violates § 6694(a) and does so willfully or recklessly.

The district court found that "Stinson not only claimed non-deductible expenses as deductible ones, but the amounts claimed were largely inflated. Stinson's conduct was repeated, continuous, and willful, occurring over multiple years and in multiple stores." Stinson targeted low-income taxpayers and took advantage of their lack of tax knowledge and their desire to obtain a high refund. As the district court held, "Stinson caused great harm to his low-income customers who have been audited and now owe relatively significant sums to the IRS."

The Government presented evidence showing that Stinson inflated and falsified expenses and charitable contributions on his clients' Schedule A forms, fabricated income, expenses, and entire businesses on their Schedule C forms, and improperly claimed deductions for expenses that were not deductible. Stinson acted both willfully and recklessly by wholly fabricating this information on his clients' returns and reporting amounts of income and expenses different from those provided by the customer. Despite holding himself out as a tax professional, Stinson made no attempt to familiarize himself (or his staff) with federal tax law. Additionally, several customers testified that they were never provided a copy of their tax return or were not provided a complete copy. At the same time, Stinson regularly created records showing he had complied with EITC due diligence and

had requested the necessary documentation when, in fact, he had never requested any such information.  In other words, Stinson's entire business model was fraudulent and deceitful, and he sought to "interfere[ ] with the proper administration of the Internal Revenue laws."  I.R.C. § 7407(b)(1)(D).

Third, the Government was required to demonstrate that "injunctive relief is appropriate to prevent the recurrence of such conduct," and that an injunction prohibiting specific conduct would not be sufficient.  I.R.C. § 7407(b)(2); *Ernst & Whinney*, 735 F.2d at 1303.  In resolving this question, other courts have considered the following factors:

> (1) the gravity of the harm caused by the offense;
> (2) the extent of the defendant's participation;
> (3) the defendant's degree of scienter;
> (4) the isolated or recurrent nature of the infraction;
> (5) the defendant's recognition (or non-recognition) of his own culpability; and
> (6) the likelihood that the defendant's occupation would place him in a position where future violations could be anticipated.

*See United States v. Stover*, 650 F.3d 1099, 1112 (8th Cir. 2011); *United States v. Gleason*, 432 F.3d 678, 683 (6th Cir. 2005); *United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1105 (9th Cir. 2000).  Here, the district court thoroughly examined all of these factors and found each one in favor of the Government.  Based on this totality of the circumstances approach, the district court concluded that an injunction under § 7407 was "appropriate and necessary to prevent future

8

interference with the Internal Revenue laws." Because Stinson was responsible for the fraudulent conduct, which was likely to recur, we affirm the district court's permanent injunction under § 7407.

**Count II - Permanent Injunction Pursuant to I.R.C. § 7408**

Pursuant to I.R.C. § 7408, a court may enjoin an individual from engaging in conduct subject to a penalty under I.R.C. §§ 6700 or 6701, if the court determines that the individual has engaged in the proscribed conduct and "injunctive relief is appropriate to prevent recurrence" of the conduct. Section 6701 imposes a penalty upon any person who (1) "aids or assists in, procures, or advises with respect to, the preparation . . . of any portion of a return" with (2) the knowledge that the return "will be used in connection with any material matter arising under the internal revenue laws" and, if so used, (3) "would result in an understatement of the liability for tax of another person."

The Government must prove a violation of § 6701 by clear and convincing evidence of fraud.[6] *Carlson v. United States*, 754 F.3d 1223, 1226-27 (11th Cir. 2014). In *Carlson,* we held that an inaccurate tax return, standing alone, is insufficient circumstantial evidence to prove fraud because a mere inaccuracy in a return does not suggest the tax return preparer knew that the returns understated the

---

[6] Stinson argues that the government was also required to prove fraud under §§ 7402(a) and 7407 because it "pleaded and demanded relief" under those provisions based on allegations of fraud and because the government failed to present expert testimony establishing a lower, negligent standard of care. We disagree. Neither section requires a showing of fraud. Even if it did, the government presented overwhelming evidence that Stinson acted fraudulently.

correct tax. *Id.* at 1230. However, as the district court properly held, Stinson's case differed from *Carlson* in two significant ways:

> First, this is not a case addressing tax preparer penalties for a violation of § 6701. Rather, the Government seeks injunctive relief, pursuant to three separate provisions of the Internal Revenue Code, each of which independently provide[s] for injunctive relief. . . . Second, the Government has not relied on inaccurate tax returns standing alone, but has provided other circumstantial evidence of Stinson's wrongdoing.

Furthermore, in the first appeal we expressly rejected this argument and held that "Stinson's contention misapprehends the holding in *Carlson* and its application to the evidence in this case." *Stinson*, 661 F. App'x at 952.

Moreover, the district court held the "badges of fraud" were abundant. During the course of the trial, the Government presented significant circumstantial evidence, beyond mere inaccuracies in tax returns, sufficient to show that Stinson knowingly and deliberately stated inaccurate amounts on tax returns in order to maximize customers' tax refunds. The evidence was overwhelming that Stinson knew he was preparing and filing federal tax returns designed to understate his customers' tax liabilities. Tellingly, on appeal Stinson did not challenge the "badges of fraud" found by the district court but instead attacked the admissibility of such evidence. Those attacks fail because Stinson has not shown that the district court's evidentiary rulings amounted to a clear abuse of discretion. *See Tampa*

10

*Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd.*, 320 F.3d 1213, 1216 (11th Cir. 2003) (noting that we review evidentiary rulings for abuse of discretion and that the "standard of deference is even greater when the objected-to evidentiary ruling is made during a bench trial because it is presumed that the district judge will rely only upon properly admitted and relevant evidence"). Accordingly, we hold the district court did not abuse its discretion in enjoining Stinson under I.R.C. § 7408.

**Count III- Permanent Injunction Pursuant to I.R.C. § 7402(a)**

Lastly, I.R.C. § 7402(a) grants district courts broad authority to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws."  This authority is "in addition to and not exclusive of any and all other remedies" available to enforce the internal revenue laws.  I.R.C. § 7402(a).

"[T]he decision to issue an injunction under § 7402(a) is governed by the traditional factors shaping the district court's use of the equitable remedy."  *Ernst & Whinney*, 735 F.2d at 1301.  The party seeking a permanent injunction must prove: (1) irreparable harm; (2) inadequate remedies at law; (3) balancing hardships between the plaintiff and the defendant to show that a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.  *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008).

11

### 1.  Irreparable Harm

Stinson's stores caused millions of dollars of harm to the United States Treasury and to the taxpayer victims.  As the Government correctly observed:

> Stinson preyed on individuals who knew little or nothing about tax return preparation and who needed assistance. He lured them into his stores with the promise of high refunds and low fees.  He got them high refunds, but he did so by preparing and filing false returns . . . [and charging] the customers excessively high fees.

Notably, many of Stinson's customers have been audited by the IRS and, consequently, now owe money on their modest incomes as a result.  Through his fraudulent actions, Stinson has undermined public trust in the tax system. Additionally, absent an injunction, the Government would be forced to continue expending resources to monitor Stinson.

### 2.  Inadequate Remedies at Law

Because § 7402(a) provides for remedies "in addition to and not exclusive of any and all other remedies," the district court correctly held that the Government "need not prove that there is an inadequate remedy at law" in order to qualify for injunctive relief.  Nonetheless, the Government satisfied this factor as, absent an injunction, it had no civil means of stopping Stinson.

12

### 3. Balance of Hardships

The balance of hardships also tips in favor of the Government. Although Stinson had to borrow money and was forced to abandon his business, the greater risk is to vulnerable taxpayers who would otherwise continue to be harmed by Stinson's fraudulent tax preparation. Moreover, the injunction does not prohibit Stinson from pursuing other ventures, such as his real estate rental business.

### 4. The Public Interest

Finally, a permanent injunction would also advance the public interest. As the district court held, "By defrauding the IRS, a tax return preparer is in reality defrauding every law-abiding American, who, at not insubstantial effort, pays their due fund to the programs of the nation." Consequently, we hold that the district court did not abuse its discretion by entering a permanent injunction against Stinson under I.R.C. § 7402.

## II.    Disgorgement

Stinson also challenges the district court's order of disgorgement in the amount of $949,952.47—a sum it found "fairly encompasses the other proposed categories of fees, without duplication, and represents a reasonable approximation of Stinson's ill-gotten gains." Stinson argues that disgorgement was improper because he "never engaged in, assisted in, or encouraged fraud." However, the district court held that "[b]ecause § 7402(a) encompasses a broad range of powers

13

necessary to compel compliance with the tax laws . . . disgorgement is an available remedy in this case."

"Disgorgement is an equitable remedy intended to prevent unjust enrichment." *S.E.C. v. Levin*, 849 F.3d 995, 1006 (11th Cir. 2017) (quoting *S.E.C. v. Monterosso*, 756 F.3d 1326, 1337 (11th Cir. 2014)). To be entitled to disgorgement, the Government need only produce a reasonable approximation of the defendant's ill-gotten gains. *See S.E.C. v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004). "Exactitude is not a requirement; so long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Id.* (quotation marks omitted and alterations adopted).

Nonetheless, a court's power to order disgorgement is not unlimited. It extends only to the amount the defendant profited from his wrongdoing. *S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 735 (11th Cir. 2005). Yet in cases involving the operation of a fraudulent business, courts accept gross receipts obtained by the defendant as a reasonable measure of disgorgement. *See, e.g.*, *F.T.C. v. Direct Mktg. Concepts*, 624 F.3d 1, 14 (1st Cir. 2010); *F.T.C. v. Febre*, 128 F.3d 530, 536 (7th Cir. 1997). Disgorgement of gross revenues is appropriate because wrongdoers are not entitled to deduct costs associated with committing their illegal acts. *S.E.C. v. Cavanagh*, 445 F.3d 105, 116-17 (2d Cir. 2006); *see also S.E.C. v.*

14

*JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1114 (9th Cir. 2006).  Additionally, once the plaintiff presents a reasonable approximation, the burden shifts to the defendant—Stinson—to disprove this amount.  *Calvo*, 378 F.3d at 1217.

At trial, the Government sought disgorgement of $1,584,481.79 against Stinson and submitted several calculations to support its request.  Ultimately, the district court awarded $949,952.47.  First, the court accepted the Government's ("Category (1)") calculation of $800,101.47 based on a showing that for tax years 2012-2014, "Stinson's stores filed 1,965 tax returns with a Form Schedule A, and 1,861 of those tax returns . . . claim[ed] unreimbursed business expenses."  Second, the court accepted the Government's ("Category (2)") calculation of $149,851 based on returns that Stinson himself prepared in 2011.  Category 2 encompassed "tax returns that identify Stinson [individually] as the paid preparer and that included a Schedule A, Schedule C, or reported education credits" with no supporting documentation or corroborating evidence.  Because the district court's disgorgement calculation was reasonable and supported by the record, we will not disturb it.

Similarly, we reject Stinson's argument that the Government was only entitled to fees from returns specifically identified as falsely prepared returns.  Although this was a civil matter, in the analogous criminal context, the U.S. Sentencing Guidelines "do not require that the sentencing court calculate the

15

amount of loss with certainty or precision . . . [but only] a reasonable estimate based on the available facts." *United States v. Bryant*, 128 F.3d 74, 75-76 (2d Cir. 1997).  As we have held, a trial court may extrapolate from available evidence, and such extrapolation may occur without interviewing every customer and preparer for every allegedly false or fraudulent return.  *See United States v. Barber*, 591 F. App'x 809, 823-24 (11th Cir. 2014).

### III.    Sanctions

Lastly, Stinson argues that the district court committed reversible error by refusing his request for sanctions under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927. In the final sentence of its opinion, the district court "decline[d] to entertain Stinson's absurd request for sanctions against the Government."  We agree with the district court.  Sanctions are wholly inappropriate in this case.[7]

**AFFIRMED**.

---

[7] Stinson argues that the Government repeatedly made "intentional misrepresentations of material fact and law."  However, the Government's allegations were based on well-established law and facts.  Furthermore, we have held that sanctions may not be imposed unless a particular allegation is utterly lacking in support.

> Rule 11 sanctions are proper: (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.

*Lee v. Mid-State Land & Timber Co.*, 285 F. App'x 601, 608 (11th Cir. 2008) (citing *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)).