[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14774
Non-Argument Calendar
_____

D.C. Docket No. 3:17-cv-00801-BJD-MCR


ADVICE INTERACTIVE GROUP, LLC,

                                        Plaintiff - Appellee,

versus

WEB.COM GROUP, INC.,

                                        Defendant - Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 16, 2018)


Before TJOFLAT, NEWSOM, and EDMONDSON, Circuit Judges.

PER CURIAM:

In this interlocutory appeal, Web.com Group, Inc. ("Web.com") appeals the district court's entry of a preliminary injunction. No reversible error has been shown; we affirm.

Advice Interactive Group, LLC ("AIG") is a small online marketing company. In September 2011, AIG began offering its "Advice Local" service, a service AIG developed in-house over four years and which remains the chief service AIG offers to its clients. Advice Local monitors clients' online directory footprints and "facilitates updating, correcting, and tracking client information online." Based on information gathered by Advice Local, AIG generates a "Visibility Score" and a "Visibility Report" for each client, which communicates to the client the scope of their online presence and the accuracy of information appearing in search engines. AIG has three copyright registrations for works associated with its Visibility Reports.

Web.com is a publicly-traded, full-service Internet services and online marketing provider. Among the services offered by Web.com is its Ignite Online Marketing service, which monitors, analyzes, and promotes the online presence of Web.com's customers.

2

In May 2013, Web.com contacted AIG to request information about -- and eventually a demonstration of -- AIG's Advice Local service.  Thereafter, the parties signed two Non-Disclosure Agreements, executed a formal Service Agreement (pursuant to which Web.com agreed to pay for AIG's Advance Local services) and engaged in ongoing discussions about potential acquisition of AIG by Web.com.  Then, in August 2015, Web.com cancelled abruptly its Service Agreement with AIG and indicated that it was moving the services "in-house."

By July 2016, AIG discovered that Web.com had launched a new version of its Ignite Online Marketing service, which produced a Visibility Report and Visibility Scores nearly identical to those developed by AIG for AIG's Advice Local service.

In July 2017, AIG filed a civil action against Web.com, alleging claims for copyright infringement, misappropriation of trade secrets under federal and Florida law, violation of Florida's Deceptive and Unfair Practices Act, and breach of contract.

AIG also filed a motion for a preliminary injunction against Web.com. After supplemental briefing and a non-evidentiary hearing, the district court granted AIG's motion.  In a detailed 35-page order, the district court concluded that AIG demonstrated sufficiently (1) a substantial likelihood of success on the merits of each of its underlying claims; (2) that AIG would likely suffer irreparable

3

harm if a preliminary injunction were not granted; (3) that the harm it would likely suffer outweighed the harm a preliminary injunction may cause Web.com; and (4) that a preliminary injunction would not disserve the public interest.

In its order, the district court enjoined Web.com "[f]rom publishing, copying, displaying, distributing or making derivative works of the Visibility Report and the underlying code used to display the Visibility Report, including by publishing, copying, displaying, and distributing its Ignite Visibility Reports and the source code used to generate those reports."  The district court also enjoined Web.com "[f]rom maintaining and using, including by selling and offering for sale its Ignite Online Marketing service, the trade secrets set forth by AIG in its Complaint."

"The grant or denial of a preliminary injunction is a decision within the sound discretion of the district court."  Revette v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, 740 F.2d 892, 893 (11th Cir. 1984).  The scope of our review is "very narrow": we will reverse the district court only if "there is a clear abuse of discretion."  Id.  Likewise, we will disturb the district court's factual findings only if "they are clearly erroneous."  Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc., 304 F.3d 1167, 1171 (11th Cir. 2002).

> This limited review is necessitated because the grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate

irreparable injury which could possibly flow from the denial of preliminary relief.  Weighing these considerations is the responsibility of the district court. . . .

Revette, 740 F.2d at 893.  We may review the grant or denial of a preliminary injunction without reviewing the "intrinsic merits of the case."  Id.

We first address Web.com's procedural challenge to the preliminary injunction.  Web.com contends that the preliminary injunction violates Fed. R. Civ. P. 65(d)(1), which requires every order granting an injunction to "state its terms specifically" and to "describe in reasonable detail -- and not by referring to the complaint or other document -- the act or acts restrained or required."  We have said that these specificity requirements "are designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood."  Garrido v. Dudek, 731 F.3d 1152, 1159 (11th Cir. 2013).  "But, we will not apply Rule 65(d) rigidly, and we determine the propriety of an injunctive order by inquiring into whether the parties subject thereto understand their obligations under the order."  Id.

Although the district court's injunctive order references "the trade secrets set forth by AIG in its Complaint," it also describes elsewhere in the order the nature of AIG's alleged trade secrets.  In particular, the district court identifies AIG's trade secrets as including "(1) back-end engine and fulfillment modules, (2)

5

proprietary algorithm to calculate a Visibility Score, and (3) confidential techniques to work with a client's online presence while avoiding common problems in online directory management and search engine optimization (such as blacklisting)." The district court also details the background of this case, including Advice Local's purpose and functionality. Moreover, on AIG's trade secrets, the injunctive order enjoins Web.com expressly from "selling and offering for sale its Ignite Online Marketing service." Viewed in its entirety, the district court's order is specific enough for the parties to understand their obligations under the order.

Web.com also argues that AIG failed to satisfy the prerequisites warranting the grant of a preliminary injunction. In particular, Web.com contends that AIG's delay in filing suit precludes a finding of irreparable harm. Web.com also argues that AIG failed to show that it was likely to succeed on the merits of its underlying claims. Web.com also asserts that the district court erred in weighing the balance of harm and in considering the impact on the public interest.

These issues are sufficiently close and complex that -- at this early stage in the proceedings and on this undeveloped record -- we cannot conclude that the district court committed a clear abuse of discretion in granting the preliminary injunction. In affirming the grant of the preliminary injunction, we make no ruling about the underlying merits of the case. A more thorough review can be had (if

6

necessary) following full development of the record and the district court's final

decision about whether to grant a permanent injunction.

AFFIRMED.